# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ADAIR/NEAL, Minors.

UNPUBLISHED
December 28, 2017

Nos. 337931; 337932
Wayne Circuit Court
Family Division
LC No. 14-517114-NA

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother M. Adair and respondent-father J. Neal each appeal as of right from a circuit court order terminating their parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Both respondents argue that the circuit court erred in finding that a statutory ground for termination was established by clear and convincing evidence.

The petitioner bears the burden of proving a statutory ground for termination by clear and convincing evidence. MCL 712A.19b(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). This Court reviews for clear error a circuit court's decision that a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357. A decision qualifies as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). Clear error signifies a decision that strikes this Court as more than just maybe or probably wrong. *In re Trejo*, 462 Mich at 356. This Court "give[s] deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

## A. MCL 712A.19b(3)(c)(*i*)

A circuit court may order termination of parental rights under MCL 712A.19b(3)(c)(*i*) if the evidence clearly and convincingly establishes:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial

-1-

dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Approximately 31 months had elapsed between the circuit court's entry of the initial dispositional order and the termination hearing. In August 2014, respondents admitted the allegations in the July 2014 amended petition. Respondent-mother admitted that she inappropriately spanked the children, leaving bruises and welts on their bodies. She admitted knowing that her physical discipline was wrong, but acknowledged that she had used it for approximately two years. Moreover, Child Protective Services (CPS) had previously substantiated six allegations of respondent-mother's physical abuse of the children between 2008 and 2013. Respondent-father conceded that he had not supported or visited the children between September 2012 and October 2013. Although he had resumed providing financial support for the children, he last saw them in July 2012.

In September 2014, the circuit court ordered respondent-mother to complete parenting classes, attend individual therapy that addressed anger management, undergo a psychological evaluation, maintain appropriate housing and a suitable income, and regularly attend parenting times. The court ordered respondent-father to participate in parenting classes, complete individual therapy, maintain suitable housing, maintain an income appropriate to support the children, and attend parenting times. The court later ordered respondents and the children to participate in family therapy.

Clear and convincing evidence established that the conditions leading to the children's adjudication in August 2014 continued to exist in March 2017, with no reasonable likelihood of being rectified within a reasonable time. The testimony of caseworker Dana Brown, case supervisor Laurie Webber, and respondent-mother indicated that respondent-mother had completed parenting classes, a parenting assistance program, and a psychological evaluation. Brown and Webber also agreed that respondent-mother was attending family and individual therapy, but testified that she had not successfully completed her therapy at the time of the termination hearing. Webber denied that respondent-mother's therapist had recommended reunification with the children. Brown and Webber also testified that respondent-mother failed to substantiate a suitable income.

Respondent-mother testified that she owned a house in Detroit, but she owed approximately $3,000 in unpaid real estate taxes on the property. In addition, Brown testified that when she inspected the house in April 2016, it had electricity and running water only in the kitchen, there was "dog feces in several of the rooms," and the home had the "aroma of dog urine and feces." The house had also been infested with cockroaches until petitioner paid an exterminator to treat the infestation. Although Brown had provided respondent-mother with applications for housing assistance and other offers of housing assistance, she failed to pursue alternate housing. Webber testified that in March 2017, respondent-mother still lacked housing suitable for occupancy by the children.

Brown, Webber, and respondent-mother testified that she and the children shared a strong bond. But according to Brown and Webber, respondent-mother failed to benefit from the anger management goal of her individual therapy. Brown testified that respondent-mother often ignored her oldest daughter during parenting times because the child had denied wanting to live with respondent-mother. In January and February 2016, respondent-mother became angry toward Brown, and argued and yelled in the children's presence.

Brown, Webber, and respondent-father all testified that he had completed parenting classes. However, Brown and Webber agreed that respondent-father had failed to participate in a psychological evaluation, lacked housing suitable for the children, and had no verified income after March 2016. Brown and Webber also agreed that respondent-father had not completed family or individual therapy.

Respondent-mother disputed much of the testimony. She denied that her house was in significant disrepair, and claimed that it had electricity and running water throughout. She also claimed that she had learned in parenting classes not to physically discipline the children. She stated that she had been employed through a temporary employment agency at a factory since January 2017. Respondent-mother testified that she attended therapy to address anger management and other issues until petitioner inexplicably cancelled the counseling, and she denied that petitioner had ever provided her with services to improve her parenting skills before 2014, or that she had spanked the children with a rope. The circuit court, however, expressly and repeatedly discredited respondent-mother's testimony, a credibility assessment to which this Court defers. *In re HRC*, 286 Mich App at 459.

The circuit court afforded respondents approximately 31 months in which to demonstrate improved parenting skills. Respondent-mother made only minimal progress in the areas of primary concern, namely, her lack of appropriate housing, her longstanding history of physically abusing the children, and her physical neglect of the children. Respondent-father also made little to no progress toward maintaining housing, possessing an income sufficient to provide for the children, or participating in therapy. The children had spent approximately 31 months as temporary court wards, and urgently needed permanency and stability.

Respondent-mother misrepresents the holding of *In re Trejo*, 462 Mich at 357-364, regarding the propriety of termination of parental rights under MCL 712A.19b(3)(c)(*i*). Contrary to respondent-mother's contention, our Supreme Court affirmed an order terminating parental rights in that case because the respondent failed to acquire appropriate housing or provide a plan for the children's custody during the year that the children resided in foster care. *In re Trejo*, 462 Mich at 357-364. Furthermore, in this case, respondent-mother failed to make significant progress toward several important components of her treatment plan, despite that she received approximately 31 months to do so. Specifically, she did not demonstrate progress in family counseling or individual counseling that included an anger management component in light of her longstanding physical abuse of the children, she never obtained suitable housing, and she failed to substantiate an income appropriate for supporting the children.

The evidence also clearly established that there was no reasonable likelihood that respondents would improve their parenting skills within a reasonable time. A decision regarding a reasonable time for improvement "appropriately focuse[s] not only on how long it would take

respondent to improve her parenting skills, but also on how long her . . . children could wait for this improvement." *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991); see also *In re LE*, 278 Mich App 1, 28; 747 NW2d 883 (2008). Respondents' lack of progress after more than 31 months demonstrated that they were not reasonably likely to rectify their parenting deficiencies within a reasonable time.

Accordingly, the circuit court did not clearly err in finding clear and convincing evidence to terminate respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

### B. MCL 712A.19b(3)(g)

Under MCL 712A.19b(3)(g), a circuit court can terminate a respondent's parental rights "if the court finds, by clear and convincing evidence," that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Abundant evidence established respondents' failure to properly care for, protect, and supervise the children, and the unlikelihood that they might within a reasonable time improve their parenting skills. *In re JK*, 468 Mich at 213-214.

Clear and convincing evidence showed that respondents failed to properly parent the children. Respondent-mother admitted that she inappropriately spanked the children, leaving bruises and welts on their bodies. She admitted knowing that her physical discipline was wrong, but acknowledged that she had used it for approximately two years. Indeed, CPS had substantiated six allegations of respondent-mother's physical abuse of the children between 2008 and 2013. Respondent-father conceded that he failed to support or visit the children between September 2012 and October 2013. Although he had resumed providing financial support for the children, he last saw them in July 2012. This evidence supports the circuit court's determination that both respondents failed to provide proper care or custody for the children.

Clear and convincing evidence also established that there was no reasonable expectation that respondents would be able to rectify their parental shortcomings within a reasonable time in light of the children's ages. *In re LE*, 278 Mich App at 28; *In re Dahms*, 187 Mich App at 648. As summarized in the discussion regarding the propriety of termination under MCL 712A.19b(3)(c)(*i*), clear and convincing evidence established that despite the circuit court's allowance of approximately 31 months for respondents to participate in parenting classes, family therapy, and individual therapy, and to maintain appropriate housing and a suitable income, respondents demonstrated minimal improvement in their abilities to provide for and supervise the children. In the meantime, the children languished in foster care for more than 31 months and required permanency and stability.

The circuit court did not clearly err in finding clear and convincing evidence supporting termination of respondents' parental rights pursuant to MCL 712A.19b(3)(g).

### C. MCL 712A.19b(3)(j)

A circuit court also can terminate parental rights if evidence clearly and convincingly establishes that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL

712A.19b(3)(j). The record clearly and convincingly establishes that the event precipitating the child protective proceeding involved respondent-mother's spanking of the children with a rope, which left bruising and welts on the children's bodies. Respondent-mother admittedly knew that her physical discipline was wrong, but acknowledged that she had used it for approximately two years, and CPS had previously substantiated six allegations of respondent-mother's physical abuse of the children between 2008 and 2013. When the children arrived in foster care in 2014, respondent-father admitted that he had failed to support or visit the children between September 2012 and October 2013.

Clear and convincing evidence established that for approximately 31 months after the dispositional order, respondent-mother failed to significantly improve her parenting skills or her problem with anger management. In addition, both respondents did not possess appropriate housing, and they both lacked incomes suitable to provide for the children. We detect no clear error in the circuit court's conclusion that clear and convincing evidence established a reasonable likelihood that the children remained at risk of potential emotional or physical harm in respondents' care. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011) (explaining that the risk of harm to children includes both potential emotional and physical harm).

Respondent-mother's reliance on *In re Boursaw*, 239 Mich App 161, 169-178; 607 NW2d 408 (1999), is misplaced. In that case, the trial court terminated the parental rights of a special needs respondent who had made substantial progress toward completing her treatment plan, primarily because of the length of time the children had remained in care, approximately 10 months. This Court concluded that termination was premature because the respondent "had made significant strides toward remedying the problems that had brought this matter to petitioner's attention." *Id.* at 176-177. In this case, respondent-mother was allowed approximately 31 months to complete a treatment plan, but made little to no progress. She attended parenting classes and completed a psychological evaluation, but she ignored the requirement that she participate in family and individual therapy, including anger management counseling in light of her longstanding physical abuse of the children. She also failed to obtain suitable housing or a sufficient income to support the children. Unlike the respondent in *In re Boursaw*, respondent-mother failed to make substantial progress after 31 months of participation in her treatment plan.

## II. BEST INTERESTS

Both respondents also argue that the circuit court erred in finding that termination of their parental rights was in the children's best interests.

Once the petitioner has proven a statutory ground, the circuit court must order termination if "termination of parental rights is in the child's best interests." MCL 712A.19b(5). Whether termination is in a child's best interests is determined by a preponderance of the evidence. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). A circuit court's decision regarding a child's best interests is also reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357.

In *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), this Court summarized:

The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citations and quotation marks omitted.]

The circuit court did not clearly err in finding that termination of respondents' parental rights served the children's best interests. The testimony agreed that a loving bond existed between respondents and the children. Respondents completed parenting classes and regularly attended parenting times. In light of respondent-mother's physical abuse of the children in 2014 and the substantiated CPS complaints of her physical abuse dating back to 2005, respondent-mother's therapy was to address her anger management problem. But she and respondent-father failed to complete family or individual therapy, even after multiple referrals by petitioner. Respondents also demonstrated an inability to provide for the children's housing or other needs. Respondents did not possess appropriate housing or an income that would allow them to provide for the children. The children had spent more than 31 months in foster care, and had strong needs for finality, permanency, and stability. Furthermore, the children lived in separate foster homes that were meeting their needs and could provide them with permanent homes. A preponderance of the evidence supports the circuit court's finding that termination of respondents' parental rights was in the children's best interests.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood